H. F. HUMPHREY, JR., & another *vs.* NEWBURYPORT
REDEVELOPMENT AUTHORITY.

Essex.    January 11, 1978. — February 28, 1978.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Redevelopment of Land. Contract*, What constitutes, By redevelopment authority, Condition precedent.

Where the Newburyport Redevelopment Authority had designated the plaintiffs as the developer of a parcel of land within an urban renewal project but the parties never entered into a land disposition agreement because of the plaintiffs' failure to produce a commitment for the financing of their proposal, no liability accrued against the Authority either for its refusal to execute a land disposition agreement or for its ultimate termination of relations with the plaintiffs. [84–85]

BILL IN EQUITY filed in the Superior Court on August 17, 1973.

The case was heard by *J. P. Sullivan, J.*

---

*Robert S. Wolfe* for the plaintiffs.

*John L. Murphy, Jr.* (*Hugh J. Doyle* with him) for the defendant.

HALE, C.J. In 1971 the Newburyport Redevelopment Authority (Authority) invited proposals from developers for the rehabilitation of certain properties located within an urban renewal project in Newburyport. The plaintiffs submitted a proposal to the Authority for the redevelopment of a parcel of land (Parcel 11) within the project. In October, 1971, the Authority designated the plaintiffs as the developer of Parcel 11 and authorized its executive director to negotiate with the plaintiffs concerning "detailed architectural plans, disposition agreement, deeds of conveyance and any other documents as may be required." Despite their continuous correspondence over the following months the parties never entered into a land disposition agreement or other contract for sale of the property. In May, 1973, the Authority revoked the plaintiffs' designation as a developer.

The plaintiffs instituted this action, initially seeking both injunctive relief and damages. Their claim for injunctive relief was waived prior to trial. After a trial on the issue of liability, a Superior Court judge made "Findings of Fact and Conclusions of Law" and entered judgment dismissing the action. The plaintiffs appeal from that judgment and challenge the correctness of several of the findings of fact and conclusions of law upon which the judgment was footed.

The success of the plaintiffs' appeal turns on our determination of the propriety of the judge's conclusions that: (1) the Authority's acceptance of the plaintiffs' proposal and designation of the plaintiffs as the developer of certain property did not create a binding contractual obligation on the part of the Authority to convey such property to the plaintiffs and.(2) the authority's decisions to refuse to enter into a land disposition agreement with the plaintiffs and to revoke the plaintiffs' designation as a developer were made reasonably and in good faith. The only

questions before us are whether the judge's findings are warranted in law upon any reasonably possible view of the evidence, *Matsushita Elec. Corp. of America* v. *Sonus Corp.*, 362 Mass. 246, 250 (1972), and whether the judge's conclusions of law were correct. Having reviewed the transcript and exhibits included in the record, we conclude that the disputed findings were warranted and that none of the questioned rulings was erroneous. The facts stated throughout this opinion are drawn from the judge's findings.

The Authority's designation of the plaintiffs as a developer signified only its preliminary approval of their proposal, thus giving the plaintiffs the exclusive right to negotiate with the Authority concerning the refinement and implementation of the proposed rehabilitation of Parcel 11. The parties expressed intention was that subsequent negotiations would lead to the execution of a land disposition agreement, but the Authority's designation of the plaintiffs as a developer did not by itself contractually obligate the Authority to convey Parcel 11. *Al's Lunch, Inc.* v. *Revere*, 324 Mass. 472, 474–475 (1949). The Authority reasonably required the fulfilment of further conditions by the plaintiffs which were precedent to the entry into any such agreement. See *Brookline* v. *Brookline Redevelopment Authy.*, 344 Mass. 562, 572–573 (1962). One such condition was that the plaintiffs establish both their financial responsibility and the economic feasibility of their proposal.[1]

At the time of the plaintiffs' designation as a developer both parties expected that the plaintiffs' estimated rede-

---

[1] The judge found that the parties' agreements were made with the intention that relevant regulations of the Department of Housing and Urban Development would be complied with in all material aspects. Among the actions required of a local urban renewal authority under HUD regulations is that after the selection of a developer but prior to entering into a disposition agreement the authority determine that the qualifications and financial responsibility of the developer are acceptable. HUD Urban Renewal Handbook, RHA 7214.1, c. 4, § 4.

velopment cost of $600,000–$700,000 would be provided by conventional mortgage financing. Such financing was necessary, as the financial information furnished the Authority by the plaintiffs disclosed that they did not personally possess sufficient assets to finance the project. At no time did the plaintiffs produce a commitment satisfactory to the Authority for the financing of the project.

On April 6, 1973, the plaintiffs were invited to meet with the Authority on April 23, at which time the Authority would reconsider its designation of the plaintiffs as a developer. By that time every developer designated by the Authority in October, 1971, save the plaintiffs, had purchased his allotted property and commenced construction thereon. At that meeting the plaintiffs agreed to furnish the Authority within thirty days with an unconditional written commitment for financing their project. The plaintiffs further agreed that, if they were unable to provide such a commitment, they would withdraw as the proposed developer of Parcel 11. They did neither, and on May 24, 1973, the Authority revoked their designation.

In view of the plaintiffs' continuing failure to provide a satisfactory commitment for the anticipated financing of their proposal, no liability accrued against the Authority, either for its refusal to execute a land disposition agreement or for its ultimate termination of relations with the plaintiffs. See *Tilo Roofing Co.* v. *Pellerin,* 331 Mass. 743, 746 (1954); *Marsh* v. *Drowne,* 1 Mass. App. Ct. 777, 781 (1974). The judge's finding that the Authority's dealings with the plaintiffs were in good faith and were not arbitrary or unreasonable was clearly warranted; a contrary finding would have been without support in the record.

*Judgment affirmed.*